

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 14, 1950

Hon. Moyne L. Kelly                    Opinion No. V-998.
Executive Director
Board for Texas State                  Re: Several questions re-
Hospitals & Special Schools                lative to the proce-
Austin, Texas                              dure to be followed to
                                           discharge patients
Dear Sir:                                  from State hospitals.

          Reference is made to your recent request which
reads in part as follows:

          "This Board is unable to interpret cer-
tain portions of H.B. No.856, Acts of the 51st
Legislature. Section 3 of the bill reads as
follows:

          "'Sec.3. Whenever an inmate of a State
Hospital thus committed shall be found by the
Superintendent thereof to have recovered to
an extent that he is no longer of unsound mind,
it shall be the duty of said Superintendent to
immediately certify that fact to the Judge of
the County Court of the county in which said
hospital is located, and file an affidavit ask-
ing for the restoration of said inmate, such
restoration proceedings to be heard and deter-
mined in the same manner as now provided by
law. It shall be the duty of said Judge to
docket and try such proceedings at the earli-
est possible time.' (Emphasis supplied.)

          "It would appear from the above quoted
section that the restoration proceedings would
necessarily have to be held in the county in
which the hospital is located. However, in
Section 4 of H.B. No.856 it is provided:

          "'Sec.4. Whenever an inmate of a State
Hospital shall have been thus certified by
the Superintendent thereof as recovered, it
shall also be the duty of said Superintendent
to immediately release said inmate, if not al-
ready on furlough, from said hospital, in the

same manner and subject to the same provisions
as is provided in Article 31931, Revised Civil
Statutes of the State of Texas, 1925, but in
no event shall such inmate be discharged from
said hospital unless and until his restoration
has been adjudged by a court of competent jur-
isdiction.  The right of rearrest and recon-
finement to such hospital shall continue to
exist as to such inmate while on furlough pend-
ing restoration proceedings in the same manner
and to the same full extent as is now provided
in Article 31931.'   (Emphasis supplied.)

"From Section 4 it would appear that the
inmate may be discharged from the hospital
when his restoration has been adjudged by a
court of competent jurisdiction.

"Question No. 1:  Is it necessary that in-
mates of State Hospitals, who have restorations,
have the proceedings in the counties in which
the hospital is located, regardless of where
the patients might be residing?  (Furloughed
patients may be several hundred miles away
from the county in which the hospital is lo-
cated.)

"Question No. 2:  If your answer to Ques-
tion No. 1 is in the affirmative, would such
provision be constitutional in requiring res-
toration proceedings in only seven (7) coun-
ties in the State of Texas, thereby depriving
the inmate from having a restoration proceed-
ing in his county of legal residence?

"Since H.B. No.856 allows discharge on-
ly by restoration, it is necessary for the
hospitals to carry patients as being furlough-
ed, escaped or transferred to another State or
Federal hospital; and since Article 31931 al-
lows furloughs for one year, re-examination at
the end of one year, and continuance of furlough
for two additional years, the following questions
arise:

"Question No. 3:  What should be done at
the end of three years with patients who are
not mentally capable of being restored, but
who are well enough not to need hospitaliza-
tion?

Hon. Moyne L. Kelly, page 3 (V-998)

"Question No. 4: How should a patient
be carried on the hospital census when such
patient is not returned at the end of the
first year of furlough for the required ex-
amination?

"Question No. 5: How should a patient
be carried on the hospital census if furlough-
ed or escaped and later committed to a State
or Federal hospital in another State?"

It was held in Hatton v. State Board of Con-
trol, 146 Tex.160, 204 S.W.2d 390 (1947), that it was
the duty of the Superintendent of a State Hospital to
discharge a patient from the hospital when he had de-
termined that such patient had recovered to the extent
that it was no longer necessary that he be held in re-
straint; and that a patient who had been so discharged
from the hospital while on furlough could not be recom-
mitted to the hospital without a jury trial even though
his sanity had not been legally restored.

At the time of the above decision there was no
mandatory provision in the law directing Superintendents
to have a person's sanity judicially restored before be-
ing discharged from the hospital. Such was one of the
obvious purposes of House Bill 856, Acts 51st Leg., R.S.
1949, ch.435, p.810, and codified as Article 5561b, V.C.
S. Such Act provides in part as follows:

"Section 1. The provisions of this Act
shall apply to all persons who have been both
adjudged of unsound mind and as needing re-
straint by a jury under the provisions of
Title 92, Revised Civil Statutes of the State
of Texas, 1925, entitled 'Lunacy-Judicial
Proceedings in Cases of,' and committed to
a State Hospital in accordance therewith,
and not charged with a criminal offense, and
to none other.

"Sec. 2. The provisions of this Act
are intended to be and shall be both manda-
tory and exclusive.

"Sec. 3. Whenever an inmate of a State
Hospital thus committed shall be found by the
Superintendent thereof to have recovered to
an extent that he is no longer of unsound

mind, it shall be the duty of said Superin-
tendent to immediately certify that fact to
the Judge of the County Court of the county
in which said hospital is located, and file
an affidavit asking for the restoration of
said inmate, such restoration proceedings to
be heard and determined in the same manner
as now provided by law.  It shall be the
duty of said Judge to docket and try such
proceedings at the earliest possible time.
. . ."

That it was the intent of the Legislature in
enacting House Bill 856 to provide a mandatory and ex-
clusive method for Superintendents of State Hospitals
to bring about a judicial restoration of a person's
sanity before discharge from the hospital is substan-
tiated by the emergency clause of the Act.  It is there
stated:

"The present anomalous and unsatisfac-
tory condition of the law in this regard,
wherein a recovered lunatic can be discharg-
ed by the Superintendent of a State hospital
without the necessity for a restoration pro-
ceeding, but cannot be returned to said hos-
pital without another adjudication of insanity,
yet remains under the legal disabilities of
the original adjudication until restored in
spite of his discharge, has resulted in great
loss and confusion to many innocent people,
. . ."

In view of the foregoing it is our opinion that
one of the primary objects in enacting House Bill 856 was
to require that Superintendents of State Hospitals to
have the sanity of a patient judicially restored before
the patient can be discharged from the hospital.  An ex-
clusive method is provided by the Act for the judicial
restoration of sanity to an inmate of a State Hospital
who is "found by the Superintendent thereof to have re-
covered to an extent that he is no longer of unsound
mind."  Section 3 of the Act requires the Superintendent
to certify such fact to the Judge of the County Court of
the county in which the hospital is located, and further
provides that such Judge shall docket and try such res-
toration proceedings at the earliest possible time.  In-
sofar as the judicial restoration of sanity to a patient
through the initiative of the Superintendent is concerned,

Hon. Moyne L. Kelly, page 5 (V-998)

Section 3 provides the exclusive court and method, and you are so advised.

On the other hand, Section 4 of House Bill 856 clearly contemplates a situation where a mental patient has been granted a temporary leave or furlough from the State Hospital under the provisions of Article 31931, V.C.S. It is provided in Section 4 as follows:

"Whenever an inmate of a State Hospital shall have been thus certified by the Superintendent thereof as recovered, it shall also be the duty of said Superintendent to immediately release said inmate, if not already on furlough, from said hospital, in the same manner and subject to the same provisions as is provided in Article 31931, Revised Civil Statutes of the State of Texas, 1925, but in no event shall such inmate be discharged from said hospital unless and until his restoration has been adjudged by a court of competent jurisdiction. The right of rearrest and reconfinement to such hospital shall continue to exist as to such inmates while on furlough pending restoration proceedings in the same manner and to the same full extent as is now provided for in Article 31931."

Section 4 of Article 5561a, V.C.S., provides, in part:

"Whenever one or more adult citizens of this State shall file an affidavit with the County Judge of the county where any one of the affiants resides alleging under oath that there is located within said county, or confined within said county, a person who has theretofore been declared to be of unsound mind, or an habitual drunkard, and that in the opinion of affiants such person has been restored to his right mind, or to sober habits, and that there is no criminal charge pending against such person, the County Judge shall forthwith, either in termtime or in vacation, set a day for a hearing to determine the sanity, or sobriety, of such person . . ."

Thus it is to be observed that if a patient is

on furlough under the provisions of Article 31931, it is possible to have a judicial restoration of sanity under the provisions of Article 5561a. In such a case the judicial restoration is instituted by "one or more adult citizens of this State" by the filing of an "affidavit with the County Judge of the county where any one of the affiants resides alleging under oath that there is located within said county" a person previously declared to be of unsound mind and asking for a judicial restoration of sanity. In such a case the sanity restoration proceeding has not been instituted by the Superintendent of the hospital, and therefore, Section 3 of House Bill 856 is not applicable. However, in all cases, whether the sanity restoration proceeding is instituted by the Superintendent or some private citizen, the Superintendent of the hospital is not authorized to discharge the patient until the court where such proceeding is instituted has judicially determined that such person's sanity has been restored.

The above answer to your first question makes it unnecessary to answer your second question.

We believe it was the further purpose of House Bill 856 to obviate the necessity of another sanity hearing before a furloughed patient, whose sanity has not been legally restored, may be returned to the State Hospital.

Article 31931, V.C.S., provides:

"The superintendent of any institution, after the examination as hereinafter provided, may permit any inmate thereof temporarily to leave such institution in charge of his guardian, relatives, friends, or by himself, for a period not exceeding twelve months, and may receive him when returned by any such guardian, relative, friend, or upon his own application, within such period, without any further order of commitment; but no patient, who has been charged with or convicted of some offense and been adjudged insane in accordance with the provisions of the code of criminal procedure, shall be permitted to temporarily leave such institution under any circumstances. The superintendent may require as a condition of such leave of absence, that the person in whose charge the patient is permitted to leave the institution shall make reports to him of

Hon. Moyne L. Kelly, page 7  (V-998)

the patient's condition.  Any such superintendent, guardian, relative or friend may terminate such leave of absence at any time and authorize the arrest and return of the patient.  Any peace officer of this state shall cause such patient to be arrested and returned upon the request of any such superintendent, guardian, relative or friend.  Any patient, except such as are charged with or convicted of some offense, who has been adjudged insane in accordance with the provisions of the code of criminal procedure, who has returned to the institution at the expiration of twelve months may be granted an addtional leave of not to exceed two years, by the superintendent, or upon his recommendation."

Since House Bill 856, which was passed subsequent to Article 31931, provides that no patient may be discharged from such hospital "until his restoration has been adjudged by a court of competent jurisdiction" it is our opinion that a patient who is not mentally capable of being restored, but who is in such condition as to no longer need hospitalization, may be furloughed, but he may not be discharged at the end of three years without restoration of sanity.

Your fourth question presents a practical problem.  If a patient is not returned at the end of the first year furlough for an examination, then the Superintendent granting such furlough should contact the person having custody of the patient and determine whether he should be returned to the hospital or granted an additional furlough.  If such patient cannot be located, and he is considered as an escapee by the Superintendent, he should be carried on the Census Roll as such.  If, on the other hand, his furlough is extended, then he should be listed as being furloughed.

In answer to your fifth question you are advised that if a patient is granted a furlough or escapes and is later committed to another State or Federal Hospital, such patient should be carried on the Hospital Census as furloughed or as an escapee as the case may be with the notation made of the patient's commitment to another State or Federal Hospital.

## SUMMARY

A sanity restoration proceeding with reference to an inmate of a State Hospital who is on furlough may be instituted in the county where the patient is located rather than the county in which the hospital is located.  Arts.3193I and 5561a, V.C.S.

A patient in such mental condition as to prevent a judicial restoration of sanity, yet recovered to the extent that hospitalization is no longer necessary, may be furloughed by the Superintendent, but in no event may he be discharged at the end of three years without a restoration of sanity by a court of competent jurisdictions.  Art. 5561b,V.C.S.

If a patient is not returned at the end of the first year furlough for an examination, the Superintendent granting such furlough should contact the person having custody of the patient and determine whether he should be returned to the hospital or granted an additional furlough.  If such patient cannot be located and is considered as an escapee by the Superintendent, he should be carried on the census roll of the hospital as such.  On the other hand, if his furlough is extended, he should be listed on the roll as being furloughed.

If a patient is granted a furlough or escapes and is later committed to another State or Federal Hospital, such patient should be carried on the census roll as "furloughed" or as an "escapee" as the case may be, with the notation made of the commital to another State or Federal Hospital.

Yours very truly,

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Charles D. Mathews
Executive Assistant
BA:mw

PRICE DANIEL
Attorney General

By    *Bruce Allen*
      Bruce Allen
      Assistant